UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

LAMAR R. ROSE,                      )
                                    )
            Plaintiff,              )
                                    )
v.                                  )          No. 3:17-CV-462-HBG
                                    )
NANCY A. BERRYHILL,                 )
Acting Commissioner of Social Security,  )
                                    )
            Defendant.              )

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 16].  Now before the Court is

Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 17 & 18] and

Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 21 & 22].

Lamar R. Rose ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge

("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner").  For the

reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's

motion.

I.      **PROCEDURAL HISTORY**

On September 14, 2013, Plaintiff protectively filed an application for disability insurance

benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*  [Tr. 20, 91–92].

Subsequently, Plaintiff also filed an application for supplemental social security income pursuant

to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* on September 23, 2013.  [Tr. 20].

Plaintiff alleged disability beginning on January 25, 2013 in both applications. [*Id.*]. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 138–39]. A hearing was held on April 27, 2016. [Tr. 51–68]. On June 2, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 20–44]. The Appeals Council denied Plaintiff's request for review on September 11, 2017 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on October 23, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2018.

2. The claimant has not engaged in substantial gainful activity since January 25, 2013, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: asthma/ chronic obstructive pulmonary disease; and low back pain of likely mechanical origin (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he should avoid concentrated exposure to pulmonary irritants such as fumes,

odors, dust, gasses, and poor ventilation; and can frequently do all postural movements.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on May 10, 1974, and was 38 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue in this case because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from January 25, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 24–44].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

**V.    ANALYSIS**

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence, as the ALJ failed to properly weigh the medical opinions of his treating physician, Thomas Cox, M.D. [Doc. 18 at 16–25]. Specifically, Plaintiff contends that the ALJ ignored substantial portions of the medical record and thus failed to provide good reasons for assigning little weight to Dr. Cox's four opinions. However, the Commissioner asserts that the ALJ reviewed the respective opinions and properly detailed several reasons for assigning little weight to each opinion. [Doc. 22 at 3–11]. However, Plaintiff also contends that the ALJ was prejudiced against him, and was predisposed to finding that he was not disabled. [Doc. 18 at 25]. The Court will address each allegation of error in turn.

## A. Medical Opinions

Plaintiff challenges the assignment of little weight to each of the four medical opinions given by his treating physician—Dr. Cox. In considering a claim of disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[1] However, the ALJ must do so only if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* If the opinion is not given controlling weight, as here, the ALJ must consider the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent

---

[1] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source," as well as "other factors." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527).

The ALJ is not required to explain how each of these factors was considered, but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight") (citing *Wilson*, 378 F.3d at 544; 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).

In the disability decision, the ALJ noted that Plaintiff testified at the hearing that Dr. Cox had been his treating physician since about 1998. [Tr. 41]; *see* [Tr. 62]. On May 3, 2012, Plaintiff presented to Dr. Cox, complaining of posterior scrotum pain and back pain. [Tr. 25]; *see* [Tr. 319]. Dr. Cox noted that Plaintiff reported four to five months of low back pain, and that Plaintiff "has ankylosing spondylit[i]s." [Tr. 319].[2] Dr. Cox referred Plaintiff to a urologist and stated that Plaintiff should be "off work two more weeks." [Tr. 320], Then, on May 15, 2012, it was noted that Plaintiff had been off work since April 23, 2012, and that Plaintiff was expected to return to work on May 23, 2012. [Tr. 322–23]. Plaintiff returned to Dr. Cox on February 5, 2013, and

---

[2] The Court notes that ankylosing spondylitis "is 'a form of degenerative joint disease that affects the spine. It is a systemic illness of unknown etiology, . . . producing pain and stiffness as a result of inflammation of the sacroiliac, intervertebral, and costovertebral joints; paraspinal calcification, with ossification and ankylosis of the spinal joints, may cause complete rigidity of the spine and thorax.'" *Gonzalez v. Comm'r of Soc. Sec.*, No. 1:17-cv-244, 2017 WL 7943809, at *3 n.4 (N.D. Ohio Nov. 22, 2017) (citing Dorland's Illustrated Medical Dictionary, 1754 (32d ed. 2012)), *report and recommendation adopted by*, 2018 WL 1157943 (N.D. Ohio Mar. 2, 2018).

reported passing out at work the day before, when he lost consciousness and fell against the boat he was working on. [Tr. 328]; *see* [Tr. 26, 56]. On February 11, 2013, Plaintiff reported to Dr. Cox and requested FMLA paperwork covering the period from January 28 to March 4, 2013. [Tr. 331].

On March 21, 2013, Dr. Cox noted that Plaintiff presented for a follow-up appointment for his chronic obstructive pulmonary disease ("COPD") treatment, and that he was unable to see a pulmonologist because his insurance was terminated. [Tr. 339]. Plaintiff reported increased shortness of breath at night, and that he gets diaphoretic if he lies flat, but that he was breathing better after being prescribed prednisone. [*Id.*]. Plaintiff's oxygen saturation was 100% at rest and 91% after ambulation. [Tr. 340]. Ultimately, Dr. Cox noted that Plaintiff "continues to be completely disabled from any vocation," he becomes short of breath with any activity, and "cannot do any type of work and cannot wear a respirator." [Tr. 341]. Additionally, Dr. Cox stated that it was uncertain when Plaintiff's disability would resolve, but that his disability would continue until his next appointment. [*Id.*]. Plaintiff continued to see Dr. Cox on April 10, 2013 [Tr. 342], May 22, 2013 [Tr. 345], as well as on August 21, 2013 [Tr. 348], for treatment of his COPD and shortness of breath.

Plaintiff then returned to see Dr. Cox on October 24, 2013, and reported that he tried to work part-time but was unable to because he would have to rest frequently and was tired after working three to four hours, leaving him unable to work a full eight-hour shift. [Tr. 385]. Dr. Cox further noted that Plaintiff reported two episodes of bronchitis and one episode of pneumonia, and that he has chronic shortness of breath after walking 100 feet. [Tr. 386]. Plaintiff's oxygen saturation was 100% at rest and 96% after ambulation. [Tr. 387]. Dr. Cox stated that Plaintiff "is disabled due to lung disease and is unable to do even part time work." [*Id.*].

Plaintiff continued to regularly see Dr. Cox, and on January 28, 2016, Dr. Cox wrote that he examined Plaintiff on December 10, 2015, and that Plaintiff suffers from "severe" COPD and shortness of breath following any exertion, including walking. [Tr. 407]. Accordingly, Dr. Cox opined that Plaintiff "was disabled from any gainful employment in 2015," that Plaintiff continues to be disabled and would be unable to work for the next twelve months, and that he did not believe Plaintiff would "improve enough to ever return to full[-]time work and therefore is permanently disabled." [*Id.*].

On April 14, 2016, Dr. Cox completed a Medical Source Statement assessing Plaintiff's ability to perform work-related activities. [Tr. 505–10]. First, Dr. Cox opined that Plaintiff could never lift or carry any weight. [Tr. 505]. However, he then stated that Plaintiff has a "very limited ability to lift," and "can only lift 10 [pounds and] carry for 30 feet" until he is forced to stop due to "back pain from ankylosing spondylitis." [*Id.*]. Dr. Cox also opined that Plaintiff suffers from shortness of breath with very limited activity. [*Id.*]. Next, Dr. Cox found that Plaintiff could sit for thirty minutes without interruption and could stand and walk for ten minutes without interruption. [*Id.*]. Similarly, Dr. Cox opined that Plaintiff could sit for three hours total of an eight-hour workday, and that Plaintiff could stand and walk for one hour of an eight-hour workday. [*Id.*]. Dr. Cox noted that Plaintiff would have to lay in a recliner with his legs elevated to alleviate leg pain and reduce his shortness of breath for the remainder of an eight-hour workday. [*Id.*]. Dr. Cox stated that Plaintiff's previous rheumatology diagnosis of seronegative ankylosing spondylitis supported the assessed limitations. [*Id.*].

Additionally, Dr. Cox opined that Plaintiff could never push, pull, or reach; that Plaintiff could frequently handle, finger, and feel; that Plaintiff could never operate foot controls; and that Plaintiff could never climb stairs, ramps, ladders or scaffolds, balance, stoop, kneel, crouch, or

crawl. [Tr. 507–08]. Dr. Cox noted that Plaintiff's COPD restricts climbing, and that balancing or bending is precluded by his lumbar spine pain. [Tr. 508]. Dr. Cox also found that Plaintiff could never be exposed to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold or heat, and vibrations. [Tr. 509]. Lastly, Dr. Cox stated that Plaintiff's limitations have been present since January 25, 2013. [Tr. 510].

Ultimately, the ALJ reviewed Dr. Cox's treatment records and Plaintiff's entire medical record in great length, as well as specifically examined each of the medical opinions. *See* [Tr. 26, 27, 31, 32]. However, the ALJ assigned "overall little weight to Dr. Cox's four opinions," with "greater weight to a few of his proposed limitations." [Tr. 42]. The ALJ also stated that "the record as a whole does not support a diagnosis of ankylosing spondylitis," but that the RFC limiting Plaintiff to light exertional level work with frequent postural movements constitutes an adequate accommodation for his back impairment. [Tr. 35]. The ALJ noted that Dr. Cox's opinions were inconsistent with the medical evidence of record [Tr. 38], that "it appears that Dr. Cox relied quite heavily on [Plaintiff's] subjective complaints, despite the overwhelming contrary objective medical evidence" [Tr. 40], and that the possibility existed that a doctor may express an opinion in an effort to assist their patient, as Dr. Cox had been Plaintiff's primary care physician since 1998 [Tr. 41]. Lastly, the ALJ found that Plaintiff's allegations of disability were given little weight because of inconsistencies with the record as a whole and in his statements. [Tr. 41].

The Court will address Plaintiff's specific allegations of error with respect to each medical opinion in turn.

### 1.      March 21, 2013; October 24, 2013; and January 28, 2016 Opinions

Plaintiff first challenges the assignment of little weight to Dr. Cox's opinions from March 21, 2013, October 24, 2013, and January 28, 2016. The ALJ detailed his specific reasons for the weight assigned to each opinion. First, the ALJ assigned little weight to Plaintiff's March 21, 2013 opinion wherein Dr. Cox reported that Plaintiff "continues to be completely disabled form any vocation," suffers from shortness of breath with any exertion, "cannot do any type of work," and that Plaintiff's disability would continue through the next appointment. [Tr. 35]; *see* [Tr. 339–41]. The ALJ stated that the opinion was entitled to little weight because "it appears to address only a relatively short period of time," it was superseded by Dr. Cox's more recent opinions, Dr. Cox did not "specifically address any other functional limitations that restrict [Plaintiff's] ability to work," and Dr. Cox's statements that Plaintiff was completely disabled and cannot do any type of work address issues reserved to the Commissioner. [Tr. 35–36]. However, the ALJ assigned significant weight to Dr. Cox's opinion that Plaintiff cannot wear a respirator. [Tr. 36].

Plaintiff contends that the ALJ did not provide good reasons for the weight assigned to the March 21, 2013 opinion, claiming that the ALJ improperly stated that the opinion covered a short period of time, mischaracterized Dr. Cox's statement that Plaintiff's disability would continue, and did not discuss how Dr. Cox's subsequent opinions superseded or were different from the first opinion. [Doc. 18 at 18]. Additionally, Plaintiff asserts that while the ALJ claimed that Dr. Cox's statements that Plaintiff was completely disabled were issued reserved for the Commissioner, the ALJ failed to still consider the opinion as required under Social Security Ruling 96-5. [*Id.* at 19].

Under Social Security Ruling 96-5, which provides guidance on the proper treatment of opinions on issues reserved to the Commissioner, such as whether an individual is disabled, "[i]f the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case

record to determine the extent to which the opinion is supported by the record." Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2 (July 2, 1996)

However, the ALJ properly stated good reasons for assigning little weight to the March 21, 2013 opinion by Dr. Cox. First, the ALJ detailed that medical record did not support a diagnosis of ankylosing spondylitis [Tr. 35],[3] as well as several broad reasons for assigning little weight to Dr. Cox's opinions—that Dr. Cox's opinions were inconsistent with the medical record [Tr. 38], and relied too heavily on Plaintiff's subjective allegations [Tr. 40]. Additionally, where a treating physician opines "on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, the claimant's RFC, or the application of vocational factors—his decision need only explain the consideration given to the treating source's opinion." *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013) (quoting *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010)). While Plaintiff is correct that the ALJ discounted Dr. Cox's opinion due to the fact that it stated Plaintiff was disabled, the ALJ explained the consideration that he gave to the opinion, including an explanation as to why he discounted this portion of Dr. Cox's opinion. Ultimately, the ALJ gave significant weight to the portion of the opinion that did not opine on whether Plaintiff was disabled—that Plaintiff could not wear a respirator. Therefore, the ALJ complied with the treating physician rule and properly weighed Dr. Cox's March 21, 2013 opinion.

The ALJ also assigned little weight to Dr. Cox's opinions on October 24, 2013 and January 28, 2016. [Tr. 36]. The ALJ detailed that:

> On October 24, 2013, Dr. Cox reported the claimant "is disabled due to lung disease and is unable to do even part time work" (Exhibit 4F, page 6). On

---

[3] *See infra* Section V(A)(2), discussing the ALJ's assignment of little weight to Dr. Cox's Medical Source Statement.

January 28, 2016, Dr. Cox reported the claimant suffers from severe chronic obstructive pulmonary disease, and becomes short of breath with any exertion, including walking. Due to this, he was disabled from any gainful employment, and will be unable to work for the next 12 months. Dr. Cox does not believe he will improve enough to ever return to full time work and therefore he is permanently disabled (Exhibit 5F). I gave these two opinions little weight for essentially the same reasons discussed for the earlier opinion, though the latter opinion does at least note shortness of breath with any exertion as a basis for his conclusions. As discussed in detail below, this finding is simply not supported by the medical evidence of record, including Dr. Cox's own examinations of the claimant.

[*Id.*]. Plaintiff claims that the ALJ did not "clearly identify" good reasons for assigning little weight to these opinions, as the ALJ "merely diverts by stating, and not clearly specifying," that little weight is given for "essentially the same reasons discussed for the earlier opinion." [Doc. 18 at 19].

Here, the ALJ again properly noted that Dr. Cox's statements that Plaintiff was disabled and unable to work constitute opinions on issues reserved to the Commissioner. *See Johnson*, 535 F. App'x at 505. "[T]he ALJ did not 'ignore' the opinion, but explained that the opinion was not due any weight because it was an issue reserved to the Commissioner." *Ballard v. Comm'r of Soc. Sec.*, No. 1:15-CV-653, 2016 WL 4523455, at *5 (W.D. Mich. Aug. 30, 2016); *see also Turner*, 381 F. App'x at 493 ("Further, the ALJ's decision adequately explained the consideration given to Dr. Wright's opinion by noting that the opinion spike to an issue reserved to the Commissioner and that the opinion ultimately expressed uncertainty as to Turner's inability to work.").

The ALJ evaluated the opinion, and appropriately considered when Dr. Cox opined on issues not reserved to the Commissioner—that Plaintiff suffered shortness of breath after any exertion. [Tr. 36]. However, the ALJ found that this finding was not supported by the medical evidence of record, including Dr. Cox's examination findings, an issue he discussed at length when

analyzing Dr. Cox's later Medical Source Statement.[4]  *See Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes."). Further, the ALJ noted that Dr. Cox's opinions, other than the Medical Source Statement, did not opine on Plaintiff's functional limitations.

Ultimately, the ALJ gave great weight to the opinion of Anita Johnson, M.D., who reviewed the evidence of record at the reconsideration level of the state agency's review [Tr. 35, 42], while assigning less weight to the opinion of Deborah Webster-Clair, who reviewed the medical record at the initial level of the agency's review, as she reviewed a "lesser portion of the record." [Tr. 35]. The ALJ also assigned some weight to the opinion of consultative examiner, Stephen K. Goewey, M.D., while noting that while Dr. Goewey did examine Plaintiff, he was not able to review other evidence of record. [Tr. 35]. Social Security Ruling 96-6p provides that "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2 (July 2, 1996).

Accordingly, the Court finds that the ALJ properly considered Dr. Cox's October 24, 2013 and January 28, 2016 opinions, and the ALJ's treatment of these opinions is supported by substantial evidence.

## 2.    Medical Source Statement

Plaintiff challenges the ALJ's assignment of little weight to the Medical Source Statement completed by Dr. Cox on April 14, 2016. The ALJ thoroughly reviewed the Medical Source

---

[4] *See infra* Section V(A)(2).

Statement, but assigned the opinion "little overall weight, largely because it is inconsistent with other medical evidence of record, including Dr. Cox's own examinations of [Plaintiff]." [Tr. 36].

The ALJ addressed "Dr. Cox's specific findings in turn, starting with those primarily related" to Plaintiff's back impairment. [*Id.*]. First, the ALJ noted that although Dr. Cox reported that his opinions are supported by a previous rheumatology diagnosis of seronegative ankylosing spondylitis, "Dr. Cox's incorrect belief that [Plaintiff] does have ankylosing spondylitis appears to have influenced his opinions of [Plaintiff's] functional limitations, because there is no other basis for the extreme restrictions he proposes." [Tr. 37]. Further, the ALJ reviewed Plaintiff's allegations of low back pain reported at emergency room visits, as well as the normal range of motion in his lumbar spine, negative straight leg raise test, and normal gait documented at his consultative examination with Dr. Goewey on December 17, 2013. [*Id.*]. Next, the ALJ detailed Dr. Cox's treatment notes documenting Plaintiff's complaints of low back pain, to find that "[t]hese visits simply do not reflect the significant abnormalities one would expect if [Plaintiff] were in fact as limited as Dr. Cox opines, and he makes no effort to address this weakness." [Tr. 37–38]. Additionally, the ALJ found that the course of treatment for Plaintiff's back pain was also inconsistent with his allegations and the assessed limitations, as Dr. Cox only prescribed pain medication once, did not refer Plaintiff to a pain management provider or suggest physical therapy or surgery, and Dr. Cox did "not prescribe[ ] entire classes of medication used to treat ankylosing spondylitis and similar conditions." [Tr. 38].

Accordingly, the ALJ found that while Plaintiff's regular visits with Dr. Cox "are consistent with a finding of some degree of chronic low back pain with occasional acute exacerbations," they do not support the limitations assessed in the Medical Source Statement. [*Id.*].

With respect to the other proposed limitations due to Plaintiff's shortness of breath, the ALJ assigned little weight to opinion due to the inconsistency with the medical record. [*Id.*]. The ALJ noted that although Plaintiff "makes frequent complaints of shortness of breath with minimal activity or even at rest, the objective medical evidence does not support the extreme limitations proposed by Dr. Cox." [*Id.*]. After reviewing Dr. Cox's treatment records of Plaintiff's oxygen saturation and findings that Plaintiff's lungs were clear, the ALJ found that Plaintiff's treatment records support a "lesser level" of respiratory restriction. [*Id.*]. Further, the ALJ noted that none of test results of Plaintiff's oxygen saturation supported the limitations assessed, and that Dr. Cox did not order pulmonary function tests, although he did refer Plaintiff to a pulmonologist. [Tr. 39].

Next, the ALJ reviewed Plaintiff's examination records from emergency room visits after respiratory complaints, finding that these records demonstrate more significant symptoms, "but only to a small degree." [*Id.*]. The ALJ also noted that Plaintiff's oxygen levels during his emergency room visits for other complaints, and that his oxygen saturation level from these visits was 96.7%, "thus falling between his emergency room visits for respiratory complaints and the levels recorded by Dr. Cox." [Tr. 40]. Further, the ALJ reviewed the consultative pulmonary function tests from April 4, 2014, recording Plaintiff's oxygen saturation at 98% at rest and 90% after exercise, stating that these tests "showed a range of results between normal lung function and moderate airway restriction, which does not support the full degree of limitation proposed by Dr. Cox." [*Id.*]. Therefore, the ALJ agreed with the opinion of Dr. Johnson, who reviewed the medical record at the state agency's reconsideration level, and found that the restriction stated in Plaintiff's RFC of no concentrated exposure to pulmonary irritants would accommodate the limitations stemming from Plaintiff's respiratory condition. [*Id.*].

The ALJ also noted two general reasons for the limited weight given to Dr. Cox's opinions: that Dr. Cox relied heavily on Plaintiff's subjective complaints, as shown through Dr. Cox's opinion regarding when Plaintiff's limitations were present matching Plaintiff's alleged onset of disability date, and that the possibility exists that Dr. Cox expressed his opinion to assist Plaintiff due to their long-standing treatment relationship. [Tr. 40–41].

However, Plaintiff alleges that the ALJ failed to properly weigh Dr. Cox's Medical Source Statement, claiming that the opinion was consistent with other medical evidence of record, as the ALJ improperly concluded Plaintiff's diagnosis of ankylosing spondylitis was not supported by the record. [Doc. 18 at 20]. Additionally, Plaintiff claims that the ALJ improperly deferred to the opinion of a consultative examiner over Plaintiff's treating physician. Further, Plaintiff contends that Dr. Cox's opinion was supported in his treatment notes through several examples of shortness of breath and low back pain, as well as Plaintiff's numerous emergency room visits. [*Id.* at 21–23]. Therefore, Plaintiff alleges that it is "unclear" how Dr. Cox's treatment notes and Plaintiff's emergency room records are inconsistent with Dr. Cox's statements in the opinion, as the medical record documents ongoing issues with severe shortness of breath and back pain, in spite of his continued treatment. [*Id.* at 24].

First, the ALJ properly found that the medical record did not support a diagnosis of ankylosing spondylitis. [Tr. 37]. Although Dr. Cox listed a diagnosis of seronegative ankylosing spondylitis as support for his opinion, the ALJ found that the medical record, including x-rays showing only mild degenerative changes, did not support such a diagnosis. [*Id.*]; *see* [Tr. 362]. The ALJ noted that x-rays of Plaintiff's lumbar spine on May 16, 2012, which were ordered by Dr. Cox, "showed no evidence of ankylosing spondylitis," and only mild degenerative changes of the lumbar spine. [Tr. 37]; *see* [Tr. 362]. The ALJ also cited to an additional x-ray from July 22,

2014 which demonstrated a "[n]ormal intact lumbar spine with well[-] maintained intervertebral disc spaces." [Tr. 37, 476].

Additionally, the ALJ's assessment that the record did not support a diagnosis of ankylosing spondylitis is further reinforced through his analysis of Dr. Cox's treatment notes on the possible diagnosis. The ALJ detailed that Dr. Cox "accepted the diagnosis of ankylosing spondylitis following his review of a 'rheumatology note,'" but that the note upon which the diagnosis is based does not appear in the record. [Tr. 35]; *see* [Tr. 427, 506]. Further, the Commissioner correctly states that Dr. Cox noted on May 27, 2013 that Plaintiff "prev[iously] has had a diagnosis of ankylosing spondylitis from someone" [Tr. 346], and on December 16, 2014, that "at one time," Plaintiff was "told" he was diagnosed with ankylosing spondylitis [Tr. 431]. However, on April 21, 2015, Dr. Cox listed ankylosing spondylitis as only a "possible" diagnosis. [424].

Further support was provided for the assignment of little weight to the Medical Source Statement through Plaintiff's consultative examination with Dr. Goewey on December 17, 2013. [Tr. 367–370]. The ALJ noted that Plaintiff exhibited a near normal range of motion in his lumbar spine, negative straight leg raise tests, as well as a normal gait. [Tr. 37]. While Plaintiff alleges that the ALJ improperly deferred to the opinion of a consultative examiner, over that of Plaintiff's treating physician, the ALJ based his findings on a review of Plaintiff's diagnostic imaging, reports of back pain at emergency room visits, lack of commensurate treatment for ankylosing spondylitis, and the results of the consultative examination. Although Dr. Goewey did find that Plaintiff had been diagnosed with ankylosing spondylitis, the ALJ supported his finding that a diagnosis of ankylosing spondylitis was not supported by the medical record.

Therefore, the ALJ properly detailed the lack of support in the medical record for a diagnosis of ankylosing spondylitis, coupled with diagnostic imaging revealing only mild degenerative changes and a lack of commensurate treatment, as a good reason for assigning little weight to Dr. Cox's opinion. *See Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 927 (E.D. Tenn. 2013) (recognizing the lack of objective medical evidence constitutes "good reason"); *Spatig v. Astrue*, No. CV-11-05055-CI, 2013 WL 147817, at *8 (E.D. Wash. Jan. 14, 2013) (finding the ALJ properly assigned little weight to opinion "on the basis that the evidence did not support a diagnosis of ankylosing spondylitis," in part due to x-rays showing mild degenerative changes); *Layman v. Astrue*, No. 3:07-CV-380, 2009 WL 792310, at *9 (E.D. Tenn. Mar. 24, 2009) (finding substantial evidence supported the ALJ's discrediting of a medical opinion, as "the ALJ outlined and highlighted the objective medical evidence of record which did not support Dr. Johnson's diagnosis").

Plaintiff also contends that Dr. Cox's opinion was supported by his treatment notes through several examples of shortness of breath and low back pain, as well as Plaintiff's numerous emergency room visits. [Doc. 18 at 21–23]. Therefore, Plaintiff alleges that it is "unclear" how Dr. Cox's treatment notes and Plaintiff's emergency room records are inconsistent with Dr. Cox's statements in the opinion, as the medical record documents ongoing issues with severe shortness of breath and back pain, in spite of his continued treatment. [*Id.* at 24].

However, the ALJ reviewed Plaintiff's emergency room visits where he complained of low back pain, as well as twelve visits with Dr. Cox from January 31, 2012 until November 10, 2015. [Tr. 37]. For example, the ALJ noted that Plaintiff denied any back pain at two emergency room visits in February 2015 [*see* Tr. 456, 462], and Plaintiff did not seek follow-up treatment when he reported moderate-to-severe low back pain at an emergency room visit in December 2014. [Tr.

37].  Additionally, the ALJ stated that no supportive examination findings were reported for Plaintiff's reports of chronic low back pain to Dr. Cox on May 3, 2012, February 25, 2015, April 21, 2015, and December 10, 2015.  [*Id.*].  Similarly, Dr. Cox reported a full range of motion of Plaintiff's right hip, with tenderness of the hip and lateral trochanter on July 17, 2014.  [*Id.*]; *see* [Tr. 400–01].  Therefore, with respect to Plaintiff's back impairments, the ALJ found that while Plaintiff's treatment records are "consistent with a finding of some degree of chronic low back pain with occasional acute exacerbations," the medical evidence of record did not support the limitations opined by Dr. Cox.  [Tr. 38].  The ALJ found that the emergency room and treatment records with Dr. Cox didn't reflect "significant abnormalities," and also noted Dr. Cox's limited course of treatment.  [*Id.*].

With respect to Plaintiff's limitations stemming from his shortness of breath, the ALJ again reviewed how the limitations assessed by Dr. Cox were inconsistent with the medical evidence.  As the Court has previously stated, the ALJ reviewed Plaintiff's oxygen saturation levels at numerous visits, including when he visited Dr. Cox's office, as well as when he visited the emergency room treatment for respiratory complaints.  [Tr. 38–39].  Accordingly, the ALJ found that while the results supported some degree of respiratory restriction, they did not support the extreme limitations that Dr. Cox opined.  [Tr. 40].

While Plaintiff points to evidence that he claims is consistent with Dr. Cox's opinion, relating to both his low back pain and shortness of breath, the Court finds that the ALJ properly identified how Dr. Cox's opinion was inconsistent with his own treatment notes and the medical record.  First, the ALJ found that the record did not support a diagnosis of ankylosing spondylitis, that Dr. Cox's opinion improperly relied upon such a diagnosis, and that medical imaging showing only mild degenerative changes did not support his opinion.  Next, the ALJ found that Plaintiff's

oxygen saturation levels, as well as examination findings of clear lungs did not support the limitations proposed by Dr. Cox with respect to Plaintiff's shortness of breath. [Tr. 38–40]. Further, the ALJ also provided several overall reasons for assigning little weight to Dr. Cox's opinions, such as that Plaintiff's course of treatment did not support the opined limitations, and that Dr. Cox relied heavily on Plaintiff's subjective complaints. [Tr. 40–41]. Importantly, the ALJ found that Plaintiff still had limitations with respect to both impairments, but not to the extreme degree opined by Dr. Cox.

Therefore, the Court finds that the ALJ properly stated good reasons for assigning little weight to the Medical Source Statement provided by Dr. Cox. *See Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes."); *Phillips v. Berryhill*, No. 3:16-CV-193, 2017 WL 6045451, at *4 (W.D. Ky. Dec. 6, 2017) ("The lack of objective medical evidence to support the opinion qualifies as a 'good reason' as used in 20 C.F.R. § 404.1527(c).").

Although Plaintiff points to alternative evidence that he claims is consistent with Dr. Cox's opinion, "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (alteration in original) (further citation omitted). This Court decides only whether there was substantial evidence to support the ALJ's decision. In that event, the Court is to defer. *Id.* The ALJ is responsible for considering all the medical opinions of record and "does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a" claimant's RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "Rather, it is the Commissioner's

prerogative to determine whether a certain symptom or combination of symptoms renders a claimant unable to work." *Luukkonen v. Comm'r Soc. Sec.*, 653 F. App'x 393, 402 (6th Cir. 2016) (citing 20 C.F.R. § 416.929(c)(1), -(d)(2)). The ALJ is responsible for weighing medical opinions, as well as resolving conflicts in the medical evidence of record. *Richardson v. Perales*, 402 U.S. 389, 399 (1971); *see also* 20 C.F.R. § 416.946(c) (stating the final responsibility for assessing a claimant's RFC rests with the ALJ).

Therefore, the ALJ's determination that Dr. Cox's opinion in the Medical Source Statement was entitled to little weight is supported by substantial evidence.

## B. Bias

Plaintiff also asks for the Court to remand his claim to a different ALJ "as the clearly erroneous application of the law and bias in this case illustrates the ALJ's indifference" toward Plaintiff's impairments. [Doc. 18 at 25].

Following the hearing, Plaintiff requested the recusal of the ALJ pursuant to the SSA's Hearings, Appeals, and Litigation Law Manual ("HALLEX")[5] I-2-1-60, claiming that the ALJ was prejudiced to deny his claim for benefits due to an "off the record conversation [the ALJ] had with counsel," in which the ALJ stated that he "did not believe [Plaintiff] has the limitations he alleged because they are not consistent with the evidence in the record," and that Plaintiff's "behavior appeared to be histrionic." *See* [Tr. 20–21].

"When considering a claim that an ALJ's decision is colored by bias, the Court must begin

---

[5] The HALLEX manual "provides 'guiding principles, procedural guidance and information' to adjudicators and staff of the Office of Hearings and Appeals." *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008) (quoting HALLEX I–1–0–1, 2005 WL 1863821, at *1 (June 21, 2005)). The guidelines provided therein, however, are not binding on the courts. *Id.* at 399.

with the 'presumption that policymakers with decision making power exercise their power with honesty and integrity.'" *Campbell v. Colvin*, No. 13-25-GFVT, 2014 WL 4928903, at *2 (E.D. Ky. Sept. 30, 2014) (quoting *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 363–64 (6th Cir. 2004)) (other citations omitted). The burden of overcoming this presumption rests with the party making the assertion of bias, and "the presumption can be overcome only with convincing evidence that a 'risk of actual bias or prejudgment' is present." *Id.* (citing *Collier*, 108 F. App'x at 363–64). Further, "any alleged prejudice on the part of the decision maker must be evidence from the record and cannot be based on speculation or inference." *Id.*

However, the Court finds that any argument that the ALJ was prejudiced in the present case is waived, as Plaintiff does not argue how the ALJ was biased or support any such argument provided through detailing relevant case law. *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)). Further, the Sixth Circuit has repeatedly found that even an ALJ's "unwarranted skepticism" towards a claimant, as well as an ALJ's "obvious frustration, emotional mannerisms and abruptness" are insufficient to establish actual bias. *Collier*, 108 F. App'x at 364 (citing *Wells v. Apfel*, 234 F.3d 1271 (Table), 2000 WL 1562845, at *5 (6th Cir. 2000)). Therefore, the Court finds that Plaintiff has waived any argument related to the potential prejudice of the ALJ, and further, has failed to establish the convincing evidence of actual bias necessary to overcome the presumption of impartiality.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 17**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 21**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge